IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 19, 2020

## DEMETRICE A. SMITH v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Knox County**
**No. 113178 PC     Bob R. McGee, Judge**

_____

### No. E2019-01689-CCA-R3-PC

_____

The petitioner, Demetrice A. Smith, appeals the denial of his petition for post-conviction relief, which petition challenged his 2017 guilty-pleaded convictions of possession of a handgun after having been convicted of a felony and failure to appear, alleging that his guilty plea was unknowing and involuntary because he was deprived of the effective assistance of counsel.  Discerning no error, we affirm the denial of post-conviction relief.[1]

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, and J. ROSS DYER, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Demetrice A. Smith.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Assistant Attorney General; Charme P. Allen, District Attorney General; and TaKisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

In June 2017, the petitioner pleaded guilty to one count each of possession of a handgun after having been convicted of a felony and failure to appear, and the State dismissed two other charges.  The agreed sentence was eight years for the firearm conviction and four years for the failure to appear conviction for a total effective sentence of 12 years' incarceration to be served consecutively to a prior sentence for a parole violation.

_____

[1]     The earlier opinion filed August 19, 2020, was vacated by order granting the State's petition to rehear on October 9, 2020.

At the plea submission hearing, the State summarized the evidence it would have presented at trial:

> The proof would be that Officer JD Hopkins, with the Knoxville Police Department, was on patrol in Walter P. Taylor Homes; that he observed [the petitioner] get out of his vehicle and walk towards an apartment. Officer Hopkins approached, and in the vehicle, he did see alcohol and a firearm. He attempted to stop [the petitioner] to find out the circumstances surrounding him being in the car, the alcohol and the gun. Officer Hopkins entered the apartment, got [the petitioner] and found out his name, found out that he had a prior conviction -- prior felony convictions, of which that would prohibit him from being in possession of a firearm.
>
> [The petitioner] was placed in the back of a patrol car. . . . [He] said something to a police officer to get their attention to let him know that he wanted to talk to Officer Hopkins. [He] was informed of his Miranda Rights. Officer Hopkins spoke to [him]. [The petitioner] admitted that he had the gun for protection.
>
> [The petitioner] was taken back to the Knoxville Police Department. And, again, he was informed of his Miranda Rights and he was interviewed by Officer Lochmueller. And, again, [the petitioner] admitted that -- that the gun was his and he came into possession of the gun for protection.
>
> Further proof would be that [the petitioner] was then charged with being a felon in possession of a firearm by warrant. [He] made bond. He was given a court date of July 20th, 2016. Proof would be that [the petitioner] was not in court when the case was called. [He] was subsequently taken into custody in Canada, in possession of some narcotics up there. Further proof would be that all these events did take place in Knox County.

The petitioner filed a timely pro se petition for post-conviction relief, and, after the appointment of counsel, he filed an amended petition, alleging that his guilty plea was unknowing and involuntary because he was deprived of the effective assistance of counsel and did not understand his rights.

-2-

At the August 2019 evidentiary hearing, the petitioner testified that trial counsel represented him throughout the duration of this case, and trial counsel discussed the charges against him, a trial strategy, and potential defenses. The petitioner stated that through his discussions with trial counsel, he understood the possibility of suppressing evidence in relation to the firearm charge. However, after the suppression hearing, counsel "didn't tell me nothing. He said that as far as the suppression hearing went, wherever we stopped at that's all that he could do." Counsel did not explain that the petitioner could appeal the trial court's denial of the suppression motion if he were to be convicted at trial. Despite having a suppression hearing, the petitioner asserted that trial counsel failed to "challenge the suppression; he didn't challenge the search and seizure of the car; he didn't challenge the pistol charge. The only thing he challenged was the fruit of a poisonous tree, some clause in that area."

The petitioner stated that trial counsel did not explain that, if convicted of both the firearm charge and the failure to appear charge, the sentences would run consecutively to each other; rather, counsel explained only that the sentences would run consecutively to a prior sentence stemming from a parole violation. The petitioner explained his understanding of the sentencing scheme, "The four and the eight was supposed to be ran concurrent [to each other], but the eight and four was supposed to be consecutive to the prior eight that I was on parole for."

The petitioner acknowledged that counsel informed him of the State's plea offer, explaining that the State "was going to gang-enhance me and career me out, and it was a double digit sentence . . . in the thirties at first." The next plea offer "brought it down to another double digit, which was in the twenties." Counsel then told the petitioner that "if I wanted to see my daughter graduate high school, that the lowest he can get me is a 16. And I still wouldn't take it." At some point, counsel informed the petitioner of a plea offer for a sentence of 12 years' incarceration to be served at 45 percent release eligibility in exchange for his pleading guilty to the firearm charge and the failure to appear charge. The petitioner stated that counsel did not explain the meaning of release eligibility but advised him to accept the plea offer because the State "wasn't going to go no lower than that." At that time, the petitioner rejected the plea offer.

The petitioner finally decided to accept the plea offer because trial counsel "was telling me that I was going to get gang enhanced; I was going to get careered out; and that my sentence . . . was going to be a higher range than what it was" and because he was ignorant of the law. He said that trial counsel "force[d] me to take that plea" without explaining that he could decline the offer. The petitioner was also concerned with incurring a federal weapons charge if he declined the plea offer because counsel had told him that "the Federal Bureau of Investigation would have picked up my pistol charge if I wouldn't

have went on ahead and plead out to this charge." Counsel explained that the petitioner would avoid the federal charge and a gang enhancement if he accepted the plea offer, but counsel did not explain the elements of a gang enhancement. Although counsel also failed to explain that by accepting a plea offer, the petitioner would forfeit his right to appeal the trial court's denial of the suppression motion, the petitioner acknowledged that he knew that he would be unable to appeal the issue. The petitioner acknowledged that counsel told him he was prepared for trial, but he stated that counsel "was not wanting to go to trial. He begged me and begged me not to go to trial." The petitioner also stated that he "even tried to get [trial counsel] off my case numerous of numerous times, and he would not step off my case for nothing."

The petitioner recalled the court's discussing the rights he would forfeit by pleading guilty, including the right to appeal, and acknowledged that he told the court that he understood the plea offer. The petitioner contended, however, that he did not have sufficient understanding of his case to enter a guilty plea, stating that he had not seen the transcripts of the suppression hearing or any other discovery materials. Although he acknowledged that counsel gave him a video recording related to his case, he maintained that he did not receive any other discovery materials. The petitioner also asserted that trial counsel failed to use the services of an investigator in his case, and counsel told the petitioner that he "really didn't need it in this case, 'cause it wasn't going to matter." Additionally, the petitioner asserted that counsel failed to "interview the witnesses" or "call a[n] evidentiary hearing," and the petitioner did not "feel like he was fighting for me."

The petitioner reiterated that he did not understand the sentencing scheme of his plea agreement. He acknowledged that counsel explained his offender classification but stated that "[h]e just blamed it on my priors"; however, the petitioner believed that his prior convictions were wrongly considered because "it was my first pistol charge and it was unlawful." He also believed that the failure to appear conviction carried a sentence of only one to two years, whereas he received a four-year sentence. "[It] was just -- just a lot of scrambled-up things that I figured that [counsel] could have worked on me." The petitioner stated that, if he had known all of these things at the time, he would have rejected the plea offer and gone to trial.

During cross-examination, the petitioner acknowledged that he had five prior felony convictions and that he had pleaded guilty to all of those prior charges. He said that trial counsel would not allow him to say whether he was satisfied with the plea agreement during the plea hearing, stating "he told me I couldn't say nothing. He told me it would be best if I did not say nothing, period." The petitioner asserted that when the court asked whether he understood his plea agreement to be "'an effective 12-year sentence to serve,'" which would "'run consecutive to your parole revocation,'" he did not understand that the sentences for the weapons charge and the failure to appear charge would be consecutive to

each other in addition to being consecutive to a prior eight-year sentence for a parole violation, of which he had one-and-a-half years remaining. The petitioner acknowledged that the he could have told the court at the plea submission hearing that trial counsel had forced him to accept the plea offer and had warned him not say anything but that he did not do so.

At the time of the evidentiary hearing, the petitioner had not been charged in federal court with a weapons charge. The petitioner acknowledged that at the suppression hearing, he saw the video recording that showed him exiting the vehicle in which the police found a handgun and the photographs that showed the handgun in the vehicle. The petitioner also acknowledged that he admitted his affiliation with the Gangster Disciples during an interview with police. The petitioner stated that he asked trial counsel to use an investigator to prove that the police officer lied about seeing the open container of alcohol in the petitioner's vehicle. He explained that an investigator could have determined that the officer could not have seen the open container from where he was and therefore would not have had probable cause to search the vehicle, which search revealed the gun. He acknowledged that at the suppression hearing, the officer testified that he saw the open container in the vehicle.

Trial counsel testified that he began working on this case after the petitioner was charged with possession of a weapon and failing to appear, and he discussed both charges with the petitioner in all of their conversations. He recalled that "there was very little discovery to this case," but the State had a video recording and photographs of the gun that was found in the vehicle. The State's evidence included two confessions from the petitioner and a police officer's testimony that he saw a gun in a vehicle from which he had seen the petitioner run. Counsel filed two suppression motions and a motion to dismiss two counts for failure to state an offense, all of which were denied.

Counsel stated that he and an investigator visited the crime scene and "knocked on a few doors to see if anybody could say that it had happened," but they did not find any witnesses. The vehicle was no longer at the scene by the time counsel began investigating. The State's first plea offer was for a 12-year sentence to be served at 45 percent release eligibility, and counsel relayed this offer to the petitioner, explaining the mandatory consecutive sentencing alignment. The petitioner refused to accept the offer, and counsel prepared for trial. Trial counsel met with the petitioner every day for a week leading up to the scheduled trial, and, at each meeting, counsel advised him to accept the plea offer because counsel believed he would be convicted of a Class C felony at trial. Counsel also advised the petitioner of his sentencing exposure if convicted at trial. Trial counsel noted that a gang enhancement charge was included in the presentment, but the issue "was kind of up in the air at that time." As part of the plea agreement, trial counsel "was assured that the Feds would not be taking this charge before he would enter this plea,"

but counsel did not think that a federal charge was "ever pursued vigorously or that they were ever really considering it." After discussing the plea offer "continuously for months," the petitioner agreed to accept the offer on the day of the scheduled trial.

Trial counsel "had very little hope . . . of prevailing in the Court of Criminal Appeals on a suppression issue," and he related his concern to the petitioner. Because he discussed the unlikely scenario of prevailing on appeal, counsel thought the petitioner "understood his ability to appeal." Counsel explained to the petitioner that he would waive his right to appeal the issue if he accepted the plea agreement, and the court "explained that to him as well."

During cross-examination, trial counsel testified that one of the reasons he filed suppression motions was to have a hearing "just to get evidence so I would know what would come at trial." The petitioner identified only one potential witness, his aunt, and, additionally, counsel "looked around for somebody that might have seen this happen." As far as the strength of the State's case, counsel stated, "[T]he fact of the matter is, Officer Hopkins says he walked up to the car, looked in the car and saw the gun." At the scene, the petitioner claimed ownership of the gun, and the petitioner confessed a second time during an interview at the police station that he possessed the gun for protection because of his gang affiliation.

On redirect examination, trial counsel stated that he explained to the petitioner that the sentence was 12 years because the sentences must be aligned consecutively by operation of law.

At the close of evidence, the post-conviction court denied the petition for post-conviction relief, finding "no credible evidence that there was any ineffective assistance of counsel." The court pronounced oral findings, including that trial counsel "filed multiple motions," "made sophisticated arguments pertaining to the sentencing and to all the matters he could raise," and "even went out with . . . an investigator, actually, did on-site investigation." The post-conviction court deemed the petitioner incredible as to his statements that he did not recall certain portions of the plea submission hearing.

The post-conviction court did not issue a final written order denying post-conviction relief and stating its findings of fact and conclusions of law as required by the governing statute, *see* T.C.A. § 40-30-111(b); however, the record includes a minute entry, stating that the post-conviction court denied the post-conviction petition. Although the trial court erred by failing to enter a final order or written memorandum conforming to the statutory requirements, *see id.*, the error is harmless in light of the court's oral pronouncements. *See State v. Higgins*, 729 S.W.2d 288, 290-91 (Tenn. Crim. App. 1986).

In this appeal, the petitioner argues that he is entitled to post-conviction relief from his guilty-pleaded convictions because he was confused about the alignment of his sentences despite acknowledging that he understood he would receive an effective 12-year sentence under the plea agreement. Additionally, the petitioner contends that he was "distressed" about his impending trial and the inability to appeal the denial of his suppression motion upon entering a guilty plea. Specifically, he states, "Perhaps . . . the [petitioner's] confusion about the sentencing structure and distress regarding the prior proceedings combined with the distress of an impending trial . . . led to a decision the [petitioner] would later consider insufficiently contemplated." The State contends that the post-conviction court did not err in denying relief. We agree with the State.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v.*

-7-

*State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citation omitted), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

In the context of a guilty plea, the petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process" by establishing "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see Hicks v. State*, 983 S .W.2d 240, 246 (Tenn. Crim. App. 1998).

Here, the petitioner does not allege any error by trial counsel that caused him to plead guilty. Instead, his only argument on appeal is that he was confused and distressed by the proceedings; however, his testimony established that he understood that he would receive a 12-year sentence and that he would be unable to appeal the suppression issue upon pleading guilty. Trial counsel's accredited testimony established that he explained to the petitioner that the plea agreement contemplated a 12-year sentence and that he could not appeal the denial of his motion to suppress if he pleaded guilty. Consequently, the petitioner has failed to establish any deficient performance by trial counsel that caused him to unknowingly or involuntarily plead guilty.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE